The next case is Gingrich v. Midkiff. Mr. Aaron Phillips for the Collins-Montgomery v. Appellee. There was a motion to sign additional authority, counsel. Yes, Your Honor. Yes, Your Honor. We do have a brief objection in that and the case that was referenced in the motion was actually decided back in March of this year. The reply brief was filed in May of this year. There was an opportunity to have cited that at that point in time. Briefly, Your Honor, we received that at 8 minutes to 5 yesterday evening. So that's just the brief concern is that there has been an opportunity to supplement prior to this time. And we understand that we're providing proof of that. Do you want to respond to that, counsel? Well, Your Honor, we didn't come across it until last week in final preparation for this. And Justice Reardon is actually one of the locators of the case. And I apologize for that. I was in court all day yesterday in front of Judge Crowder. He got it filed as soon as we got it. All right. The court will grant the motion to give you a time on this panel once to respond. Well, I think it's going to be quite honestly, Your Honor, I think it's going to be integrated into the motions today. So if we can't allow for a written supplement, if necessary, within 21 days. Counsel? Very good. All right. Let's proceed. Ms. Phillips? Thank you, Your Honor. May it please the court. Good morning, members of the panel, counsel. My name is Erin Phillips, and I'm here today from the law firm of Unsell, Shatnick & Phillips, P.C. on behalf of the appellant, Tina M.F. Gingrich, P.C., who I will refer to as Gingrich, P.C. throughout this argument. Also present at counsel table is Patrick Kenney of the law firm of Armstrong & Teasdale, also present for appellant. The issues presented to you in this appeal arise out of a damages claim of a breach of contract of a non-compete provision that was listed in a stock purchase agreement between the parties in this case. The allegation that underlies this suit is that the appellee, Christina Almeida Midkiff, a physician that I will refer to as Dr. Midkiff throughout this argument, actually breached the contract when she did not adhere to the requirements of the non-compete agreement. As the panel may be aware, this is a matter that has been here before the court previously in a prior Rule 23 order, and there was a prior litigation, the first case, the Gingrich 1 case, that was resolved prior to these proceedings. So the two issues today that we're going to ask the panel to consider are first, whether the trial court erred in this matter by violating the law of the case doctrine. As I just indicated, there was a prior Rule 23 order where there was a decision made on a motion to dismiss that was filed by Dr. Midkiff. Dr. Midkiff filed a motion to dismiss the claim in this matter back in 2007, and she filed that motion to dismiss on the basis that under 619A4 that there was a prior judgment that precluded this claim, and that was based upon claims of res judicata and collateral estoppel. That came here to the court. There was a Rule 23 order reversing and remanding that for further consideration. So the first question is whether or not the law of the case applies such that the argument raised subsequently in the motion for summary judgment should have actually been presented at that point in time when it was first here on the motion to dismiss. The second issue is, then turning from the law of the doctrine of the case, that is whether the trial court erred as a matter of law in granting the summary judgment in favor of Dr. Midkiff on the grounds that the non-compete was inapplicable and also that any ambiguities had to be construed against Dr. Midkiff based upon a claim that Dr. Gingrich and Gingrich PC were the drafters of the contract. Would the court like a brief recitation of the facts? Would that be helpful in this matter? Okay. Well, briefly, the highlights as we have alluded to just a moment ago are simply that we have doctors who back in 1998, Dr. Gingrich and Gingrich went out and hired Dr. Midkiff and another physician. In October 1999, Dr. Gingrich, Dr. Midkiff, and a third physician entered into a stock purchase agreement. 2002, Dr. Midkiff and the third physician filed a 1256 action. In April of 2002, there's an interim management agreement that is entered into, and in May of 2002, Dr. Gingrich elects to purchase the stock under the stock purchase agreement and under the 1256 action. In August of 2002, there's a notice of termination of a shareholder filed by Dr. Midkiff and the third doctor, and that kind of brings up all the background in the past. Bringing more into the present, in August of 2005, Dr. Midkiff had moved out of the location that Dr. Gingrich and she practiced in jointly in Maryville. She moved into another location directly across the street in an Autumn Oaks building, which is located directly from where she had practiced with Dr. Gingrich. The underlying action regarding the 1256 was resolved. Dr. Gingrich ultimately did purchase the stock from Dr. Midkiff. Subsequently, in March of 2007, Gingrich PC filed the present suit against Dr. Midkiff, claiming that since January of 2007, Dr. Midkiff had violated the non-compete agreement. As I mentioned a moment ago, there was a motion to dismiss that came before you. That motion was ultimately appealed, remanded, and reversed. When it went back down after the Rule 23 order, Dr. Midkiff thereafter filed a motion for summary judgment. And the motion for summary judgment was allowed by Judge in Madison County. This appeal resulted then on August 1st, 2012, which brings us to the arguments. And the standard of review with respect to both of the arguments is de novo. First, as to whether the law of the case doctrine barred Dr. Midkiff's new construction argument regarding the contract is a question of law de novo. And as to the issue of whether the grant of summary judgment was appropriate, the standard of review would also be de novo. Turning first to the law of the case doctrine, as the panel is aware, the law of the case decides matters explicitly or by necessary implication in the prior appeal. And the rule of the law of the case is a rule of practice that we adhere to so that we have succinct conclusions so that a case may proceed through litigation, all parties on equal footing. It is applied with equal force to all parties who are present in the earlier litigation. Now, in this circumstance, the court's prior Rule 23 order rejected by necessary implication Dr. Midkiff's newly argued contract construction argument. And that is that by the purchase of the stock in the 1256 action, the noncompete became null and void. And the first time that that was presented ever in this litigation was in 2011, after this case had been filed in 2007 and after the prior litigation. It was never presented at the pleading stage in 2007. Rather, the answer was in the form of a motion to dismiss under 619A4. Yes, Counselor. Our requirement was limited to the 12.56 action and we did not address the stock purchase agreement at all. Correct? That is correct, Your Honor. Why should we now not do that? Well, because all opportunity was available back at that point in time. There could have been a joint motion under 619.1 filed for consideration at the same time on the motion for summary judgment. There was nothing new that allowed for the basis for the motion for summary judgment other than what was already present in the pleadings and within the file at the time that the motion to dismiss was filed. There could have been a judgment on the pleadings. There could have been a motion for summary judgment as a joint motion under 619.1. Everything was ripe and available there within the file at the time that the record was developed and sent to you previously. And the position is that by necessary implication, there has to be a case or controversy available. If there was no case or controversy available in the first place such that there was no validity to the non-compete agreement by function of the purchase under the stock, under the 1256 action of the stock, that would have disposed of the entire litigation previously as well. And we didn't address the merits of the breach of contract action. But in terms of the... I'm just saying implicitly that we did. Well, Gingrich was the appellant in the previous appeal. Is that right? Yes, Your Honor. All right. So basically your argument is that in that kind of situation, unless the appellee, even though this isn't an issue raised in the appeal by the appellant, unless the appellee in that appeal says, here are all the other grounds upon which you could affirm this, even though they weren't addressed by the trial court, unless he does that, then the law of the case doctrine bars him from raising that claim later. Based upon the case of Martin v. Federal Life Insurance. With all deference to our colleagues in the third district. Do you think that's a good idea? Well, and I think it depends on the particular circumstances of the cases. I think that what you have to take into consideration here is that this is not your typical case, which is newly filed, no discovery, no understanding of what the position of the parties are in the case. I think this is much more akin to the Martin case, where in Martin all of those theories had been developed. The statute is actually even more interesting in that case, because the statute that they subsequently relied upon in the summary judgment was available, and it was the court who sui sponte raised that concern. It was not even. And so I think that here, the reason why I think it is even more applicable, is because given the position of this particular litigation, if you take into reference the prior case, the ongoing nature of it since 2002, that there wasn't subsequent discovery that was required in the 2007 case. It does apply here, because there was an opportunity to preserve all those things when you're filing a motion that you seek to dispose of the entire significance of the case. I think it's different from the Walensky case that we know that the appellee is going to address, in that in Walensky you had a circumstance which was a newly filed case. You had a 615 motion, and simply the only thing that was addressed was whether or not there was an ability to state a claim upon which relief could be granted. So different procedurally than here in a 619A4 where you're saying that you have a prior judgment, I think at the same time it was perfectly reasonable to have potentially framed this as a 619A9, as an other affirmative matter, as a judgment on the pleadings, or again as a joint motion for a summary judgment under 619.1. So I think it would be reticent to suggest that that is applicable in all circumstances, but I think given the nature of this case and its similarity to Martin, that in fact it would be applicable to this case. So what we would be saying essentially is let's just assume for the sake of argument that we agreed that the trial court did the right thing on the merits of it, but we would be saying because you didn't raise this in this previous appeal when you were the appellee, you're barred forever from making this good claim that's the appropriate outcome for the lawsuit. In this particular circumstance because of the fact that it was available at that point in time in the nature. Isn't that putting quite a burden on an appellee? You don't just address the issues that the appellant raised. You've got to think through and come up with every other ground upon which maybe the trial court's judgment can be sustained. Otherwise you lose the ability to ever use that again. Yes, Your Honor. I think, again, given the fact that we do have a procedure that allows us for these things to be raised jointly and concurrently, that there's a reason that we have that. And I think that the idea is that if you want to have the case disposed of, you can preserve all of the basis upon which you could have had it disposed of at that point in time that were available to you. I think it's a very different circumstance had there not been the availability for the basis of what was moved upon for in the motion for summary judgment. Clearly, if you needed discovery that would have later developed those facts, no, that would be overly cumbersome. But given here that all of that discovery and evidence was available in the record, it could have been perfected at that point in time. Thank you, Your Honor. Turning to the second point, also preserved in the brief, is that once leaving the argument with regard to the law of the case doctrine, reversal would still be required because the trial court erred in holding that the contractual non-compete provision has no application to Dr. Medkiff. First of all, as the panel is well aware, our summary judgment law is clearly established in Illinois. And it's a very drastic measure that we obviously do not want to use to dispose of a party's rights unless it's clear and free from doubt. And the purpose is not to try a question of fact, but to determine whether or not one exists, or if there are material facts that are not disputed, but if reasonable persons might draw different inferences, a motion for summary judgment should be denied. And here, Your Honors, that is exactly the circumstance that we have present before us in this case. The law with regard to contract construction is also well established. And what occurred in this scenario was that rather than looking at the intent and trying to give effect to the party's intent, it's kind of a succinct motion on the idea that it should be construed against the drafter. And in contract laws, we know that is kind of an area of last resort. We should first go to other areas of construction, interpretation, and try and give full meaning and effect to the party's intent. Here, the idea that it should be construed against the drafter has no application. The record contains many references to the fact that Dr. Medkiff was an active participant in the drafting of this contract. She was a participant. She made changes to it. She agreed that she had been represented and had the opportunity to consult with legal counsel with regard to the drafting of it. And therefore, the idea that it's construed against the drafter should not be applied here. When that's not applied, then you have to go to looking at the abundant, extrinsic evidence of the party's intent here. And that comes back to Dr. Medkiff's participation in the drafting of the non-competing agreement. First, there was a carve-out specifically for the city of Alton just for Dr. Medkiff. As I referenced, there was a third physician, Dr. Marlena Freeman, who is not a participant in this litigation, but she was a party to the non-compete agreement. The non-compete agreement provides for the carve-out for Alton solely as to Dr. Medkiff, not as to Dr. Freeman, because what the language of the non-compete agreement had required was that for five years subsequent to the ending of the relationship, that there would be no other office or patients taken outside of 20 miles. So you had to go 20 miles outside. But Dr. Medkiff, being familiar with the area and from the area, negotiated for herself that she would, in fact, be allowed to maintain an office in Alton, in the Alton area with those hospitals, and or would be able to go into Missouri. But that was excluded from the scope of the non-compete. And I think it's very relevant to also take into consideration that at this point in time when the non-compete was entered into, all three physicians had a great interest in seeing that the patient base of the practice was protected. Dr. Medkiff and the third physician had been a part of the practice for about a year and a half. They were trying to build that practice so that their shares in the corporation would increase. And they had just as much of a mutual interest in seeing that that corporation would continue if one of the members departed. But again, when you look to that and the court were to give effect to the intention of the parties, it's clear that the parties had intended that the non-compete apply and that it apply under those terms, which specifically allowed for the carve-out. She sold all of her shares, so did the non-compete clause cease to apply? No, Your Honor, it did not. If you look to the language of the non-compete agreement, which has been much discussion throughout these briefs, if you look to the section of the stock purchase agreement, it's section 8, I believe, and it talks about termination. It talks about termination of the agreement, which applies broadly to the entirety of the non-compete agreement. And in terms of that, it references leaving. If Dr. Midkiff were to leave the practice, it talks about withdrawal. It talks about termination. It has a separate area that applies specifically to expulsion. And it's a terminology that has been put into place to apply to many different scenarios of voluntarily leaving the corporation and in addition specifically to expulsion. In terms of that, if you think about the application of the effect that if you go out and you file a 1256 action, and Dr. Midkiff was the person, one of the persons who initiated this originally, she was the person who sought for the corporation to be dissolved in this manner. Ultimately, it ended up being that Dr. Gingrich and Gingrich PC purchased those stocks, but she was the one who initiated this. To give credence to the argument from the appellee that it doesn't apply in this scenario would provide a windfall. Essentially, it would allow a person to enter into a contract and say that they are going to be bound by the non-compete agreement, but subsequently if they choose to withdraw under different terms, then they're not bound. If they come in and it said originally if they did withdraw under the terms of the agreement that six months was the time frame. Would that mean that if at five months and two weeks you left that you wouldn't be bound? Or if you didn't give notice at all that you wouldn't be bound? To suggest that simply because this arose out of a 1256 action that the non-compete should still not apply would give no effect to the party's prior good faith and dealing in this manner. It would suggest that there was in fact intentions of bad faith when it was entered into because otherwise it would allow a party to not comply, come in and leave in the middle of the night basically without any notice and then never have to comply with the non-compete. Interestingly enough, Dr. Midkiff not only was allowed to withdraw from the corporation through the 1256, but she was actually compensated for those shares. So when you think about that through the 1256 she was compensated for the shares, she was provided value for that to suggest that because it is a 1256 action that she should not have to comply would produce irregular results. I mean that would say then that somebody who does leave, does the six months and doesn't get purchased out, doesn't have a buyout until a later date, which is what the SPA provided for under different circumstances, that that person would be bound. That person would not be able to practice within that area for the limited amount of time. But a person who goes out and files a 1256 action of their own accord ultimately is able to get without, sorry, pardon, ultimately would not have to comply with the non-compete. That just would provide irregular results. So it would encourage people to act in bad faith and to find a reason to not have to comply with those requirements, simply to not have to comply with the non-compete. And again, if you turn back to the time in which this non-compete was entered into, the three doctors each had an impetus to protect this patient base. And therefore, it's our basis that this construction of the non-compete is therefore unreasonable to suggest that it would not apply to a 1256 action. Additionally, I think you also have to consider that Dr. Midkiff, again, was the person who initiated the 1256. She did voluntarily leave. So an argument that she didn't voluntarily leave is clearly not supported by the record and the evidence in this case. She initiated the 1256 action. And not only that, in August of 2005, she chose, in violation of the interim management agreement, to leave the building and facility where Gingrich PC was and move across the street to Autumn Oaks. That was not something that was agreed to by the parties. And specifically, I'm sorry, I see that my time has concluded, Your Honor. Thank you. One more. Good morning, Justices. Good morning, Aaron and Mr. Kenney. I'm sure everybody knows Justice Rarick. You don't need an introduction, but I'll introduce him. Anyway, the Court's right. The law of the case doesn't apply here. The operative section, the 2619 section, clearly says the motions may be filed together. It doesn't say they must be filed together. And the 2619A4 motion was simply that this action is barred by the prior action, based on the doctrine of res judicata and collateral estoppel. What's important about the Walensky case is it was in the same district as the Martin case, and it adopted the rule of the law of the case that we all think should be applied, that issues of facts and matters concerning merits of a controversy between the parties which were presented to, the one cases which were presented to but not decided by the appellate court and not covered by the law of the case. In this case, the argument about the contract was neither presented to or ruled upon by the appellate court. And unless you have any questions, I think it's clear that the law of the case doesn't apply. Like you mentioned, Justice Stewart, it would put an undue burden on the party prevailing. They've got to think about every possible offense they could bring to the contract action when they're up here in the appellate court. When we were just here on the 2619A4 motion, if Martin would have any applicability, it might have an applicability, might have an applicability if we would have come in the first time and said dismiss this case based on the prior judgment under the doctrine of res judicata. And the trial court grants that, the appellate court sends it back, and then we file another 2619A4 motion on collateral estoppel, then maybe Martin would have some applicability. But in this situation where the contract was never at issue, it was just a motion on that, on the prior judgment should bar the current action, it's not the law of the case. And the appellate court, as you picked up, Justice Wexton, in its Rule 23 order specifically said, we merely conclude that the Gingrich breach of contract action is not barred by res judicata and collateral estoppel. And you go on to say, we're not making any ruling on any other provision of that, including the reasonableness of the restrictions. So it was clear that you ruled on that and only on that issue. So the law of the case is not applicable. It's interesting that Ms. Phillips talks about extrinsic evidence and a bunch of other, the ambiguities, issues, but we need to look, really, at the stock purchase agreement, because the stock purchase agreement's pretty clear. The operative section of the stock purchase agreement is section F. And it says, F2 says, any shareholder may elect to withdraw from the corporation upon giving six months' notice in writing. And on the expiration of six months, the withdrawal will be effective. Two, how do we compensate? Distribution to the withdrawing shareholder. Three, covenant not to compete says this is applicable from the date of such termination. That such termination can only have meaning if it applies to the termination of withdrawal. And it's not a global covenant not to compete. And that's confirmed by F8, which talks about if we expel a shareholder, if F4, the covenant not to compete, were globally effective, then F8 wouldn't have to come in and say, the expelled shareholder must adhere to the non-competing section F4. So what it says is it applies if you withdraw, and it applies if you're expelled. And it's pretty specific in that language. We all know how to write. We've all seen it. Justice is both affirming and denying. We've all seen what a global covenant not to compete says. It says during the term of this relationship and for a period of two years thereafter, you shall not compete. No conditions, no restrictions. It's global. During the period of this agreement and for two years thereafter, it's not effective. So this, and again, the first time the contract, when we were here for the first appeal, my comments in the 1256 action, this isn't a contract action. This isn't a contract. You heard it in the briefs. You heard it in the appellate court the first time. The first of the 1256 action was not a contract action. But we thought that the 1256 action, because of its findings that the restrictions were necessary, Dr. Gingrich's admissions that she could get as much business as she could get any way she wanted, we thought all of those determinations in the rulings of Judge Mendelson barred this action based on the prior action. And then the court said, you said under race judicata, you said a 1256 action is different than a contract action. Therefore, race judicata doesn't apply. And as to collateral estoppel, what the court said is even though Judge Mendelson found the restriction wasn't reasonable, public policy was disfavoring the covenant, we determined that the judge in the 1256 action could have decided not to impose a restrictive covenant and he didn't have to give any reason for it. And he didn't have to make all of these findings about reasonableness and restrictions, which by the way was a less restrictive covenant they were seeking. But he didn't need to make those findings. He could have ruled without making those. So those were unnecessary decisions. So they didn't come under the doctrine of collateral estoppel. When we talk about ambiguities, I think it's pretty clear on the record, I need to maybe go back and chug it, that Dr. Gingrich was the draft of the agreement. But I don't think we need to get to the ambiguities. Ambiguities are construed against the draft. Right. Correct. Correct. So the inter-summary judgment to not consider excluding sick evidence seems a little harsh. Well, it does. First of all, I don't think the contract is ambiguous, Justice Wexton. That's the first thing. The contract's not ambiguous. It says clearly, F-4 says such withdrawal can only have meaning if it applies to the withdrawal. And F-8 confirms that when it says if you're expelled, the covenant not to compete comes back in. And there would be no reason for F-8 to reference back to F-4 unless it meant that the covenant not to compete is governed only by F-2 withdrawal and F-8 expulsion. Ambiguities are resolved against the non-compete. That was going to be my second one. A non-compete is intended to be a shield, not a sword. And what Dr. Gingrich is trying to do here is to use it as a sword because she's already said I can get as much business as I can. I can hire as many. But it's not. And you're right, Justice Wexton. You took the words out of my mouth. The next ambiguity was courts generally abhor restraints of trade. So that's why two things. Restricted covenants are strictly construed. You have to be right on the button if you want to enforce a restrictive covenant. And if there's any ambiguity, it's construed against enforcement of the restrictive covenant. I don't think the court needs to get there because I think F is pretty clear when it's reading. And so let me address a brief – The trial court didn't find any ambiguities. Right. The trial court said, you know, I've looked at it. It's not ambiguous. There's no need for extrinsic evidence. Here's my interpretation of it. I mean, there was a throw-in line here that if there were any ambiguities, they'd have to be resolved against the drafter of the contract. But I don't read it that the trial court found any ambiguities. That's absolutely right. It was a throw-in line that if there were any ambiguities, it would be. The final thing I want to address is this concept of the 1256 action. Dr. Mitkoff could have filed this 1256 action as an end-around against the enforcement of the restrictive covenant. I want to address it. The first time we were actually at the appellate court was on the 1256 action because we, Dr. Mitkoff, did not think that Dr. Gingrich made a proper election to buy her stock out. And the trial court agreed with us. And the appellate court reversed on that and remanded it that the election by formula in that case was appropriate. But the 1256 action was then, if we're going to talk about second bites of the apple, the 1256 action was Dr. Gingrich's chance to get a restrictive covenant. She argued the intent of the parties prior in the 1256 action. She argued for that. So to say that Dr. Mitkoff could have done an end-around in the 1256 to obey the restrictive covenant is inapplicable because she put the restrictive covenant and a less restrictive covenant at the risk of the trial court in that decision. So let me turn to the issue of value because she says, well, Dr. Mitkoff got compensated for her shares, which is absolutely right. She did get compensated for her shares when she was bought out of the Gingrich PC model. But what happened in that case was there was valuation testimony. And the valuators both talked about the value of the business with and without the restrictive covenant. So Dr. Mitkoff, when she got bought out of the corporation, the first time was bought out of it with no value in this corporation as if there had been a restrictive covenant against Dr. Mitkoff. So if she was going to be barred by a restrictive covenant, then the value of Gingrich PC would have increased. And Dr. Mitkoff, in theory, should have gotten more compensation for her stock in this more valuable corporation because it had this restrictive covenant. And it's also, I don't believe that a Dr. Mitkoff could have just said, adios, I'm not following the contract, I'm just going to quit today. And that that would have been a way to, this is how you withdraw or you can be expelled. But in a 1256 action where we had the prior court action, I don't think that that's applicable. And again, I'm going to go back to Justice Wexton and Justice Stewart. The contract is not ambiguous. It's clear, and the trial court found that. And if you read this carefully and you give meaning as we're supposed to to every word that's in this contract, none of them are in there superfluously, then if you don't adopt our interpretation of the contract, you have to totally disregard the word such in F4 from the date of such termination. And you have to totally disregard the provision in F8 about expulsion, which says if you're expelled, the covenant not to compete is applicable. And it doesn't say, as it could have said, if it was drafted by Dr. Gingrich and others, it could have said during the term of your relationship with Gingrich BC and for a period of two years thereafter, the restricted covenant's not applicable. And the fact that Dr. Metcalf negotiated a carve out in case I decide to withdraw, in case I want to carve out, that's an illusory argument because you don't get to that unless the restricted covenant is applicable. So I think there's, and we didn't even talk about the issue preclusion argument, so we don't get to another rule. Hopefully, you'll affirm the trial court judge and we won't be here again. But we didn't get to the issue of our second basis for a motion for summary judgment. So I don't want to leave that unaddressed because Judge Mudge again found that he didn't need to go to the second basis of our motion for summary judgment, which was based on all the judicial admissions and based on all of the issue preclusions, we were entitled to summary judgment, which is a different argument than barring the whole case under 219A4. And that's adequately briefed in both of our briefs, that issue. But we don't want to just ignore the fact that that's also out there and also theoretically in front of this appellate court, even though the trial court found that it didn't need to rule on the second basis for a motion for summary judgment. So unless the court has any questions, unless Justice Rarick says he needs to talk to me for a second before I quit, thank you very much. Yes, Your Honors. Briefly, in rebuttal, I'd like to touch upon a number of things. First of all, yes, in fact, there are ambiguities that exist in this stock purchase agreement. It is found, and I believe the justices may have already located it, but at 826 at the back of the brief. If you look to those sections, there's a number of words and terminology that are used. First of all, as I referenced earlier, it's very telling that the entire section is entitled Changes and Termination of the Partnership. It also discusses, as we've set forth, the withdrawal of the shareholder. But I'd like to turn to paragraph number four. And if we're talking about the use of words and consistent use of words and the fact that each and every word needs to be given relevance because it's there for a particular reason, if you, in fact, go to the fourth line down, there's a sentence that begins, an exception shall be made for Christina L. Midkiff, M.D., to allow her to practice in hospitals in Alton, Illinois, if she leaves. So now we have another word in here. We have a word in here that says if she leaves. It doesn't say if she elects to withdraw under the procedure set forth in number two. It doesn't say if she's expelled on number eight. It simply says if she leaves. And the fact of the matter is is that by filing the 1256 action and thereafter in August 2005, moving to another facility directly across the street, she left the corporation. And specifically, that wording is directly applicable to Dr. Midkiff. It's particularly referenced solely as to Dr. Midkiff. So the position that she did not withdraw or voluntarily leave from the corporation should not be given effect here. Additionally, there's no case law that's been presented here that says because it was a 1256 action that the non-compete would not apply. There is no case law that supports that position. Rather, we have abundant case law that says that non-compete agreements can be upheld with physicians. And simply because they are physicians, it does not mean that they shouldn't be upheld. We've cited to the Canfield case, the Shearer case that give different situations that apply to doctors who were practicing in the Rockford area. Another one was a physician practicing in the Chicagoland area where similar restrictive covenants were upheld for both of those physicians. Additionally, if you take a look to this own court's decision on a prior non-compete in the Shuffle case, that was where a geographic limitation even more significant than the one contemplated in this case was upheld, which was a five-year and 50 miles from any city where that accounting firm had a potential office location or had an office location situated. So I think that those are all things that must be taken into agreement in determining this. And Justice Wexton, you did ask if there are ambiguities, is a motion for summary judgment severe? And yes, that's exactly what our position is in this case, is that if in fact there are ambiguities, it needs to be remanded and turned back to the trier effect and a decision made as to those ambiguities. And that is the relief that we are requesting in terms of the motion for summary judgment, that it be reversed and remanded and that ultimately a decision on the merits as to those ambiguities be allowed. Briefly, I'd also like to correct an earlier statement, and I apologize, Justice Stewart. I said that Martin was from the third district. I am incorrect. It is from the first district, as is Walensky. But what is interesting about that case is while Walensky and Martin do both come out of the same district, Walensky did not overrule Martin. It specifically mentions, it says, we're going to in this set of facts, kind of with regard to our prior discussion, in this set of facts, we're going to rule in this fashion. But it specifically says, but see our prior decision in Martin where we ruled under those set of facts that the law of the case did apply. So I think that that's telling. It's not a situation where it's been overruled. It specifically says under a different scenario, different facts, in Martin we ruled this way. And here our case is akin to Martin. It is like the Martin case. It is very, very similar to the Martin case as compared to the Walensky case where it was, as I discussed previously, based upon solely just whether a cause of action had been stated. So with that, the defendant, I'm sorry, the appellants pray that the court reverse the order of the trial court granting Dr. Midkiff's motion for summary judgment and that the court remand this matter to be decided on the merits of Gingrich PC's breach of contract claim for all the reasons set forth in the briefs and with regard to the arguments that have been here today. Thank you.